May it please the Court, I would submit that the threshold question in this case is, does this motor vehicle liability policy apply to the use of Yarrab Temple's member-owned parade vehicles being used by Yarrab members during a Yarrab parade event? I thought the question was whether the Act covered it. I thought everybody conceded that the policy language itself was not as broad as the Act. Am I wrong? Well, the parade vehicle endorsement, okay, this policy is like many automobile, primary automobile insurance policy that you see in the Georgia. But in this case, there is a very unique endorsement. So, you're telling me the policy covers it, we don't have to look at the Act? You have to look at the Act and the policy. Well, the Act provides that if the policy isn't as broad as this language, you read it into the policy. Correct. So, I thought there had been a concession strategically, I can't see any reason not to concede it since the Act is broader than the policy, that the policy doesn't cover it but the Act does. I thought that was the position. And that is true to this extent, Your Honor. The reason the policy has got to cover parade vehicles owned by members of YAROB is because of the parade vehicle endorsement. It provides liability coverage. And so, therefore, because it provides liability coverage, it applies and, therefore, for any then you've got to have the UM, where you have the liability coverage, is our position. And so, the trial court didn't even discuss it, but this endorsement says it applies while member-owned parade vehicles are used by members going to and from YAROB Temple parades. And consequently, as you point out, because the policy applies to these parade vehicles owned by these members, in general, under the liability coverage, there's got to be corresponding UM coverage unless it has been rejected in writing by 33711. And there is no question in this case that there is no written rejection of the UM coverage as to the use of these member-owned vehicles. Consequently, the UM coverage for these parade vehicles owned by members has to be the $1 million in UM coverage because those vehicles have $1 million in coverage under the liability part. The trial court, we believe, got it wrong because it looked only at the UM provisions of this policy. And as we concede in our brief, as written, the UM provisions, as written by Pretorian, they don't include UM coverage for these parade vehicles owned by members. Because the policy only provides uninsured motorist coverage to occupants of scheduled vehicles. And we would all concede that this was not a scheduled vehicle. Correct. Agreed. Okay. But rather, and we concede that, and this is not a contract interpretation case. We're not saying this was vague or ambiguous. Rather we're saying that this policy, when issued, didn't comply with the UM law as to rejecting UM coverage for these parade vehicles owned by members that are otherwise covered by the liability coverage. Now if the member-owned parade vehicle endorsement did not exist, everything that Pretorian is arguing in this case would be true. But Yareb and Pretorian agreed that this policy would provide liability coverage for Yareb members using their member-owned vehicles in parades. And because that parade vehicle endorsement exists, there must also be a UM rejection as to those vehicles, as to the use of those vehicles. And it must be in writing. But wouldn't the other side say that the parade exception gives liability coverage to the insured but not to the converted vehicle because it's not a vehicle on which the policy applies? The parade vehicle endorsement says liability coverage applies only while the parade vehicle is used in parades. It's talking about the use of the vehicle. Now it is true they're not going to pay for any loss of the, they don't have an insurable interest in the property, but it's the use of the vehicle that the liability attached. And it's the use of the vehicle as used by Yareb members. That's the very core of that parade vehicle endorsement. And again, because that endorsement is there, UM coverage has got to follow unless written rejection of that coverage. Um, Yareb and Praetorian agreed for this parade vehicle endorsement to provide liability coverage to its members while using those member-owned vehicles. And again, they knew... But there is a significant practical issue from what you're talking about, too. When an insurance company is issuing a policy and it's going to have the, they're offering on a vehicle, they have to offer the uninsured motorist and they say, unless you in writing disavow it. How in the world do you come to every single member who's using a vehicle in a parade and say, oh, by the way, how do you, do you want it or not? I mean, there's a practical impossibility to that. I don't know that it's impossible. And I would cite to you the Jones versus Federated insurance case that we cited in our brief. In that case, the, it was a commercial policy, the corporate named insured wanted liability coverage for its directors and officers and also its customers, okay? They wanted liability coverage there. But then as to the UM arena, though, they only wanted UM coverage for the officers and the directors. They didn't... But that's a direct relationship between the insurance company and the insured. So in that word here, you're talking about the insured is trying to capture its members whose vehicles are involved in the parade. The insurance company is not involved with going up to every person who's in the parade, having them sign on or off. Respectfully, they don't need to have my client sign off on it. The only requirement is that the named insured sign off on it. And in Jones, what the name insured did is we don't, we reject UM coverage for all the customers. We want it for our officers, but we reject it for all customers. And that was sufficient. But you're saying if the Temple had signed off on that, you're not having any kind of request? No, no, no. Mr. Collins didn't need to sign off. It's just that the Temple needed to sign it, just like the named insured in the Jones versus Federate case. Okay, you solved my practical impossibility problem. So no Georgia case has ever held that a written rejection wasn't necessary when the policy otherwise applied to that vehicle. So with the no written rejection, this policy has got UM coverage grafted into it. And my client at the time was an insured. Admittedly, he's not an insured as defined by the policy that Praetorian written, but he was a statutory insured under 33-711 as to UM. UM statute defines insureds. And it doesn't define insureds as simply owners of vehicles or users of vehicles specifically listed by the UM coverage. Instead, the statute has much broader language. It says an insured is any person who uses with the express or implied consent of the named insured the motor vehicle to which the policy applies. They used the phrase, the Georgia legislature used the phrase policy. They didn't, and they said to which the policy applies. They didn't say as to which the UM coverage lists the vehicle. In Georgia, there is no standalone UM policies. Everything is connected to liability policies. For my client to use that parade vehicle and that parade on that day, he had the permission of YAROB because one, he had a parade sticker that YAROB issued to him, and on that day he had to have the permission of YAROB's parade marshal to participate in this parade. This is not a case where we're coming in here and saying he had blanket coverage for any possibility. I mean, we're not saying if he had gone down the road on a personal errand, he would have had coverage. This is not a situation where we're contending he would have had UM benefits if he had been participating in a parade sponsored by someone other than this named insured. But on this day, he was in that parade because YAROB, his club was having that parade. They needed parade vehicles, and they said it was okay. Okay. I see. You've just quoted the statutory language that says you have to provide this coverage for the motor vehicle to which the policy applies, and you have already told us that even with the parade exception, that this was not a scheduled vehicle, that there is no property liability that is attaching to the converted vehicle, so how do you square those two? How is it a motor vehicle to which the policy applies? Because it says it applies while those vehicles are being used. What says it applies? The parade vehicle endorsement. It says there is liability coverage while a member is using parade vehicles owned by those parade members. Liability coverage applies only while the parade vehicle is used in parades going to and coming from. That parade vehicle endorsement specifically says it applies to these parade vehicles owned by these members while they're in our parades, and because liability is there, UM has got to attach unless rejected in writing. Okay. Mr. Holt, you've got your four minutes in reply, and we'll hear now from Ms. Glickhoff. May it please the Court. Stephanie Glickhoff on behalf of Praetorian Insurance Company. What this case boils down to is a statutory interpretation issue. We've got the UM statute, OCGA 33711, which sets forth what provisions policies need to have in Georgia without getting an express rejection of that UM coverage. And what the statute says is that any policy issued in Georgia needs to have or provide or offer UM coverage to these two categories, two basic categories. And the district court picked up on a good description of those two categories, which is found in the Duncraft case. But basically what the statute says is we're going to look at the named insured and any resident relatives of the named insured. Those people need to be offered uninsured motorist coverage no matter what they're driving. Okay, we, an insurance company, can look at the risk of those people, etc., when they're issuing that policy. So those people are known people, and those people need to be offered uninsured motorist coverage no matter what they're driving. The other risk that the insurance company needs to provide UM coverage for unless it's explicitly rejected is any vehicle that the policy applies to, any vehicle that's listed on the policy. I think an easier example is to look at a personal auto policy. My personal auto policy is going to provide uninsured motorist coverage to me, my husband, my kids, no matter what car they're driving in, unless I reject it in writing. It's also going to provide coverage for anybody driving my car, which is listed on my policy, or my husband's car, which is listed on our policy. So for example, if my next door neighbor's car is in the shop and she wants to borrow my car to run to the store, it will provide coverage to her, provided I give her permission to take my car when she's in my car. It is not going to provide coverage to her when she's in her own car. Similarly, if I had a babysitter that was taking my kids someplace, and the babysitter was in my vehicle, the babysitter, and now we're not talking about the kids because they're under that first category, but the babysitter would have coverage for herself in my vehicle. If she was in her own vehicle, that would not be something that my insurance would be required to cover. So now we need to look at the policy that Praetorian issued to Yerup Temple and determine, okay, does the policy provide those required coverages? Because we all agree there wasn't a written rejection of those coverages. In fact, those coverages were provided to Yerup, so of course there would be no written rejection because the named insurer, Yerup Temple, accepted them. So let's look at the policy and what the policy language provides to see if it meshes with that. So if we look at it, it says you first look at who is an insured under the policy to see if those categories are in there. And it says that an insured is any person or organization who qualifies as an insured in the who is an insured provision in the applicable section. So the applicable section here is uninsured motorist. So we go under uninsured motorist and we look at who is an insured. And this is what it says. It says that if the named insured is an organization, which is what we have here, anyone occupying a covered vehicle, which are the vehicles that are scheduled in the policy, is uninsured, is covered for UM coverage. Also the named insured, which is Yerup Temple, is covered in any vehicle. Now obviously Yerup Temple is not a person. So Yerup Temple cannot ride in a vehicle. So that portion of the policy says that UM coverage is provided for the named insured for property damage only. Because that is really, you can't have bodily injury to Yerup Temple. You can only have bodily, you can only have property damage. So if Yerup Temple had an item that incurred property damage in any vehicle, it would be entitled to coverage for that. So this is exactly mirroring the UM statute. And it's providing those exact coverages that the UM statute provides. And I don't think we'd be here if that's the end of the story. We're here because of the parade exception. And how does that fit? So the parade exception provides coverage for liability coverage for members when they're involved in parade activities. In a parade, going to a parade, coming from a parade. It has nothing to do with uninsured motorist coverage. Really the only, it's essentially a red herring that's placed in there, or as the district court calls it, a novel and murky argument. Mr. Aholt's trying to argue that, well, look here, Mr. Collins would be insured if he got in an accident and a parade and he was at fault. And therefore, you'd have to cover him for liability coverage. Therefore, you need to make sure that coverage for him is rejected under the UM statute, even though the UM statute doesn't say that. If you look at every single case cited by either side, you'll notice that the cases that find that there should be UM coverage or there needed to be a rejection are all cases where the person seeking the coverage fits under that statutory category. Where they're either the named insured under the policy, Yarob in this case, or they're in a vehicle that's on the policy. And we can go through them. The Jones v. Federated case. That was a vehicle that was owned by the named insured. That somebody, it was a car dealership, was the named insured. So they owned the vehicle. Somebody was driving that vehicle. So that would be category two that we talked about. Roberson v. 21st Century. That was a resident relative. So that's category one. It's named insured or resident relative of the named insured. Fits in category one. That's a case where they said you need to have UM coverage or a written rejection. Doe v. Rampley. Another resident relative. A father of the named insured. Again, you need a written rejection. The district court relied upon the Duncraft v. State Farm case. That case was a little unusual because there was a question of fact. The woman was outside of her vehicle when the incident happened. She thought she saw an injured deer. And so she was outside of her vehicle. So there was a question as to, well, does it even relate to the vehicle? Because she wasn't in it. But with regards to UM coverage, the vehicle was owned by the named insured. So again, the vehicle's on the policy. So that's the second category. The cases that we cite. Chastain v. U.S. Fidelity. There was no coverage when you had an employee in his own car. A Yurov Temple member in his own car. And I think one of the closest cases I've found, and I can go on, but they're all cited in the briefs. But one of the closest cases I found, which is not in any of the briefs, it's a recent district court case that just came out a few months ago called State Farm v. Greeson at 2019 Westlaw 3560226. This was a live-in boyfriend of the named insured. And his name was actually on the policy. He was as an additional driver. But he was not a named insured under the policy. But his name was listed as an additional driver. So he was provided liability coverage under the policy in certain circumstances. He gets in an accident driving his own vehicle, which is not listed under the policy. So let's look at the two categories. He's not a resident relative. He was a live-in boyfriend. But what exactly does that have to do with this case? Well, because it shows that just because you might be an insured under some provision of a policy, that doesn't mean that you're entitled to uninsured motorist coverage. I gather that. I mean, I understand that. The language is, any person who uses with expressed or implied consent of the name to insure the motor vehicle to which the policy applies. That's the statutory interpretation issue you started talking about. I'm not sure how this, which we've gone over and over and over again, plays into that. All the cases that are interpreting the statute. Right. Have interpreted the language, the motor vehicle to which the policy applies to relate to a motor vehicle that's listed under the policy. To which the policy applies. That's what it says. I just, I didn't understand that that was the core issue in the case. Yeah, the core issue is how you interpret that line. And so each, if you look at each case. The policy either applies to a vehicle or it does not. Right? Yes. Okay. These other cases are different situations in which the policy, because you're citing them, didn't apply. So the question is whether the policy in this case, the motor vehicle to which the policy applies. So rather than live-in boyfriends, these two guys, as far as we know, aren't live-in boyfriends. We need to talk about the specific facts of this case and why the policy applies to that vehicle or not, don't we? Um, Your Honor, yes. And, and the, the cases that interpret that, that, the, that section of the statute in Georgia specifically find coverage is required and, and, and that the, um, it is a motor vehicle to which the policy applies when that vehicle is listed under the policy. So some of the cases I cited. Are there some other provision in the policy that extends coverage to that vehicle? I don't know enough about all kinds of insurance policies to know that you list, we all know what a listed vehicle is, or at least I see that every year when I get my policy renewal. But you can also have a provision in the insurance policy that extends coverage to other vehicles that the insured may use, right? You, you can. None of the cases interpreting this statute have that situation. They all either have a listed vehicle or a named insured or resident relative. So, so while there, there could be a circumstance where, where that is the case, there, there's not a single case. That doesn't mean that it doesn't clearly apply to it. If the policy says we will provide coverage for any vehicle that one of the named insured owners is driving with the permission of that vehicle's owner, even though that vehicle is not listed in the policy. I thought I've seen that before. And my point, our rental, we cover rental vehicles. That's vehicles to which the policy applies. Now, why aren't we talking about whether there's anything in this policy that applies to this vehicle in these circumstances? There's, there's not. The vehicle's not listed. Maybe that's your argument. And, and there's no policy that says of any members of your borough temple. What makes this case different, of course, is it's a, it's a organization as opposed to a person or a household or a couple or partners or whatever. I don't understand why we're talking about living boyfriends. Well, because the, the way the, the courts have looked at the definition of insured is they either look at the relationship, which would be your example of somebody in a rental car. They're looking at that person's the named insured, and they're in another vehicle. Or you, in this example I gave of, you know, my, my self, if I'm in another vehicle, I'm always going to be covered. So in Duncraft, they separate that. So that's looking at who, who it is. In this case, it would be your temple. And the other scenario is the vehicle, what the vehicle is. And then, and, and in that section, second section, that's where the vehicle needs to be listed. There's, there's no dispute that this vehicle was not listed on this policy. There were 40 pages of, of vehicles listed, and this one was not on it, was not supposed to be on it. There's no argument that it was. So here, we don't have, under Category 1, a named insured, or the person that's, that, that's supposed to be covered by the statute. And we also don't have, under Category 2, which is a permissive use of, of vehicle. And, and because we don't have the, either of those, there's no requirement that UM coverage be explicitly rejected. I think we understand your argument. Okay. Thank you. All right. Mr. Aho, four minutes. Yes, Your Honor. I think you hit upon something, Judge, with Ms. Glickoff. The UM statute doesn't use the words listing, okay. That, what it says is, no automobile or motor vehicle liability policy shall be issued or delivered by any insurer in this state upon any motor vehicle unless it has this UM endorsement. And you are right. Vehicles covered can be described by policy provisions, just as you pointed out. What the statute says, my frustration is we keep going over that over and over and over again. I take statutes to mean what the plain language says. Yes. And if you've got something else to add, I for one would welcome hearing it. You can, you can spend your three minutes and four seconds repeating the same thing if you want to. It's up to you. If I've stated everything, I believe that I needed to state. So I appreciate it. Mr. Locke represents Mr. Penny, and I don't know if he has anything he wants to add. He's got a minute, and we'll give him two of yours if you want to cede him two minutes. I will cede them to him. All right. Put three minutes on the clock for Mr. Locke. Thank you, Your Honor. May it please the Court, I'm Nathan Locke. I represent the co-appellant, Mr. Penny. And I ceded most of my time to Mr. Aho because he requested this oral argument, and I appreciate the Court letting me speak under those circumstances. I will assist the Court. I think the Court's correct in focusing on the plain language, and we've beat that horse to death. But one of the things that I think is helpful to compare this to is fleet policies. There are insurance policies that are issued for a fleet of vehicles because it's inconvenient to describe them. A lot of times there can be fleet policies where the vehicles that would be scheduled, if you were to schedule them or attempt to schedule them, they change so frequently that instead you give a description of a category of vehicles, which is what we've done with the parade vehicles in this case because, could you imagine the difficulty in scheduling each parade vehicle? You'd have to take an inventory of all the owners of these policies, and you'd have to figure out what they have. They change these things regularly. It's something that the members during the parades like to do. They change these policies. And so what you do in that case is exactly what was done in this case. Under the liability definition, it says in addition to the scheduled vehicles, which we know aren't going to change regularly, we know there's this category of vehicles that we also want to provide liability coverage for when they're being used in parades. But that's not what the parade vehicle provision says. It says we're going to include as an insured. It doesn't say we're going to include coverage for all vehicles used by our members in a parade. Well, the two are naturally tied together. When you look at the definition of insured under the parade endorsement, it says we're going to add as insured these individuals while operating these vehicles in a parade. We're going to insure the people while they're operating the vehicle. It does not say we're going to, we're now listing all vehicles that our members might use in a parade. The same argument applies. I think Ms. Gluckhoff had tried to say earlier that there's two ways you can be tied to a policy, either as an individual or through the use of a covered vehicle. Those two kind of get tied together there. But once you're named on that liability, the statute is going to graft coverage unless there's a written rejection. That rejection is what gives the insurance company the opportunity to alter the definition under the UM coverage. And so I think that is the only thing that I wanted to provide to the court is sometimes it's helpful to think of this under comparison to fleet policies. Unfortunately, in my belief... If, in this accident, was there property damage coverage for the covered vehicle? Was there property damage coverage? Is there anything that kicks in to fix this vehicle? Well, the at-fault driver had liability coverage. Any uninsured, well, let me, I'm sorry. Under the Temple policy, were any payments made to fix the converted vehicle? No, there wasn't. But had there not been enough liability coverage to cover the property damage, then we could potentially be here on the same basis arguing that there is UM property coverage as well. But it never came to be. Had there not been enough liability coverage on the other vehicle. That's correct. Thank you. Thank you, Your Honor. We will take that case under submission.